RODRÍGUEZ HEVIA & Co., *S. en C.*, Plaintiff and Appellee, *v.* LÍNEA FÉRREA DEL OESTE, Defendant and Appellant; VALENTÍN NEGRÓN, Plaintiff and Appellee, *v.* LÍNEA FÉRREA DEL OESTE, Defendant and Appellant; EVARISTO ROBLES, Plaintiff and Appellee, *v.* LÍNEA FÉRREA DEL OESTE, Defendant and Appellant.

Nos. 4790, 4789, and 4791. Argued November 22, 1929.—Decided June 25, 1930. Rehearings denied July 10, 1930 and July 24, 1930.

*Artemio P. Rodríguez* for appellant. *Fernando B. Fornaris* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

The actions herein arose from a collision between a locomotive and a truck which resulted in damages to the truck and injuries to the chauffeur and his helper (*peón*). Three separate complaints were filed. The evidence in the first case was heard and the parties stipulated to have the other two cases abide by that evidence. Damages in the sum of $1,894 were claimed in the first case, and the court rendered judgment awarding that amount. In the second case, $1,560 was claimed as damages, and the court in its judgment granted $1,000. In the third case, the claim was for $1,260, and the court allowed $500. The defendant took separate appeals from the three judgments which were heard at the same time and which will be considered and disposed of jointly in a single opinion herein.

The manner in which the accident occured was alleged in each of the complaints as follows:

"3. That on or about March 27, 1924, at approximately 6 p. m., the aforesaid truck of the plaintiff was traveling along the road leading from Bayamón to Cataño, and when near the bridge which lies in the said road at its terminus in Bayamón, a locomotive belonging to the defendant which was going in the same direction and driven by engineer Pablo Cases, who then and there was an agent and employee of the said defendant and was acting within the scope of his employment as such agent and employee of the defendant, negligently collided with the said truck, the front part of

the locomotive striking the right side of the truck and throwing the vehicle over a precipice, where it remained almost completely destroyed.

"4. That the negligence of the engineer consisted in failing to sound a warning of the train's approach and in driving the engine and the wagons attached thereto at a great speed without taking the proper precautions to avoid an accident, by slowing down or stopping the locomotive when he saw that the truck had entered the bridge and that, owing to the small width of the bridge, both the truck and the train could not pass over it at the same time.

"5. That the accident with all its consequences was caused solely and exclusively by the imprudence, unskillfulness and negligence of the said agent or servant of the defendant corporation, which negligence consisted in the facts set forth in the preceding paragraph of this complaint."

The defendant alleged in its answer:

"4. The defendant admits that on or about March 27, 1924, at the hour mentioned in the third paragraph of the complaint, the said truck of the plaintiff was traveling along the road leading from Bayamón to Cataño, but the defendant denies that one of its locomotives collided with the said truck when the latter approached the bridge which lies in that road at its terminus in Bayamón; on the contrary, it alleges that on the day and at the hour mentioned, before entering the bridge which spans the Bayamón river outside Bayamón in the road to Cataño, the said truck driven by its chauffeur Valentín Negrón and on which Evaristo Robles worked as a helper, both of whom were then and there the agents and servants of the plaintiff and acting within the scope of their employment as such agents or servants, was driven by the said Valentín Negrón too far inside the track of the defendant's train at the moment the said train was passing the aforesaid place, said truck colliding against the left side of defendant's train, causing its derailment and the fall of the engine over a precipice. The defendant alleges that the said accident was due entirely to the negligence of the plaintiff and his servants and particularly to the negligence of the chauffeur Valentín Negrón, who failed to stop or take any precaution when approaching the track of defendant's train which is laid at that place and crosses the said bridge, and who failed to heed any of the signals of the approach of the said train sounded by the servants of the defendant.

"5. The defendant denies that its engineer or its servants, on the day and at the hour mentioned in the complaint, gave no warning of the approach of the train or that the said engineer drove the locomotive and the wagons attached thereto at a great speed without taking the necessary precautions to avoid the accident; and on the contrary it alleges that the said servants, at the time of the occurrence of the said accident and immediately previous thereto, were ringing the bell and, before entering the road, the said engineer slowed down the train. The defendant further alleges that its servants took all the necessary precautions. to avoid the accident, which was due to the negligence of the servants of the plaintiff in driving the truck too close to the track at the moment when the train passed that place without the said servants heeding in any way the warnings sounded by the employees of the train and without stopping, looking, or listening when approaching the railroad track of the defendant.

"6. The defendant denies that the accident was due to the recklessness, unskillfulness or negligence of any of its agents or servants."

In considering the evidence heard, the district judge said in his statement of the case and opinion filed with the judgments:

"The account given us by the defendant as to how the accident occurred does not seem to us to be worthy of credit or acceptable, and I am inclined to believe the theory of the plaintiff, which was corroborated by the driver of the truck and by his helper, to the effect that they were going at a moderate speed; that when they approached the bridge the defendant's train was coming; that it showed up suddenly, coming also from Bayamón to Cataño; that on seeing it so close to them, the truck's helper became frightened or confused and rang the bell which signalled the truck to stop, as the train was already close on them; that at that moment the truck swerved to the right and the train, bent on passing, hit the truck from behind and threw it over the precipice."

And further:

"The question to be decided is whether, under those circumstances, there was contributory negligence on the part of the employees operating the truck, of such a nature as to bar any recovery of damages resulting from the accident.

"I think it was proved that on the bridge which the train was about to cross there was not sufficient room for the two vehicles to pass at the same time. It was not shown that the train had an exclusive right of way over the bridge; on the contrary, it appears from the evidence that this bridge forms a part of a public road, and that both a private train and the said truck had an equal right of passage over it. I say this in order to explain any liability that might exist in this case.

"In view of the character of the place where the accident occurred, the dilemma faced by those who were in the truck was simply the following: If they went on, they would enter the bridge and be overtaken by the train, which was close behind, and undoubtedly an even more serious accident would have occurred; or they might stop suddenly, in order to leave a free passage for the train, which was coming fast, and thus avoid a fatal accident. It appears that the truck's helper lost his presence of mind in the face of the imminent danger, became frightened and gave the wrong signal.

"Now, as to the train, could the engineer ignore the fact that the truck was traveling ahead of him on the road? I do not think so. According to the law he was bound to see it."

The appellant assigns in its brief thirteen errors, which it argues in groups of several assignments.

In the first two assignments it is claimed by the defendant and appellant that the trial court based its judgments on the erroneous theory that the accident occurred on the bridge.

In order to be convinced that this is not so, it should suffice to read the statement of the case and opinion of the court and to examine the very photographs upon which so much reliance is placed by the appellant when discussing its ninth assignment of error.

It is urged in the third and fourth assignments that the court erred in finding that the truck was going in front of the train when the accident occurred, and in failing to find that "the truck was going somewhat behind the engine and the wagon, and that it was the truck which collided against the wagon when swerving to the right."

We remember the extraordinary efforts made by counsel

for the appellant at the hearing and we have considered his able argument in his brief under these assignments; but we can not accept his theory. The evidence adduced by the plaintiffs fully supports the findings made by the district judge, and the conflict which arose by reason of certain testimony offered on behalf of the defendant was resolved against the latter, without any suggestion of passion, bias, or prejudice, or without any showing of manifest error. On the contrary, an examination of the testimony, the facts proved, and the photographs, leads to the conclusion that the theory adopted by the judge is the most logical and the one that probably corresponds most nearly to the real facts of the occurrence.

The errors numbered 5, 6 and 6 b relate to the application of the doctrine of emergency by the trial court.

The action of the district court in this connection was guided by the following excerpts taken from Ruling Case Law:

"It follows from what has been said that anything which operates to deprive a person of the ability to exercise his intellectual powers and guide his acts thereby will relieve him of an imputation of negligence that otherwise might arise from his conduct. Emergencies or sudden perils illustrate this proposition. The rule judicially stated is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. Accordingly it was held that a restaurant owner was not liable for the act of an employee in attempting to remove a burning lamp. It appeared that the employee discovered a burning and dangerous gasoline lamp, and, taking it up, attempted to carry it away. In doing this his clothing caught fire. He then threw the lamp from him, when it exploded and severely injured the plaintiff. In affirming a judgment of *nonsuit,* the court said: 'The act of the employee who threw the lamp was done at a moment when he himself was in flames, and as an indispensable and urgent act of self-preservation. He was endeavoring to remove the lamp from the room, an entirely proper and commendable action. To do this he had taken it in his hands and

was proceeding toward the door when the flames emitted from the burning fluid attacked him and threatened him with most serious and, possibly, fatal results. To escape from this calamity he instinctively threw the lamp from him; but not until he was severely burned. Such an act, done in such extreme circumstances, is not to be judged by the rules which are applicable ordinarily to acts done in cool blood, with time and opportunity for the party to consider the consequences and the methods of the act he is about to do. The decisions of this and other courts are very numerous in the application of the principle to cases in which persons suddenly placed in positions of peril and impending danger do things which ordinarily would be acts of negligence.' A person in whose possession and under whose control combustible material becomes ignited, and who, by removing it in order to save his own property, destroys the property of another, is not in position to claim the benefit of the rule that one compelled to act in an emergency is not held responsible for failure to exercise the better judgment which might result from deliberation, since that rule is applicable as between the person who acts and the person by whose fault he is compelled to act without time for deliberation. The case may be governed by another recognized rule, to wit, that, where a loss is to be borne by one of two innocent persons it falls upon him who is least innocent." 20 R.C.L. 29.

We think that the lower court acted correctly. Besides, the circumstances disclosed by the evidence are such that, even though no wrong signal had been given, the accident would probably have happened, and then it would have taken place on the bridge itself and the consequences would perhaps have been worse. The truck, which was going in front, was entitled to travel along there and, in view of the narrowness of the place, on approaching the bridge and crossing it, it necessarily had to do so over the railway track. Owing to the difference in the rate of speed at which they were moving—the truck slowly and the train fast—and to the nearness of the locomotive, close behind the truck when the latter's helper gave the signal, the locomotive would have overtaken the truck and collided against it, even though the truck had not stopped.

It is contended under the 7th, 8th, and 10th assignments of error that the court ought to have held that those who operated the truck had been guilty of negligence, in not taking the proper precautions when going upon the bridge and in failing to heed the "stop, look and listen" signboard erected at that place; instead of holding, as it did, that "it not having been shown that the railroad had an exclusive right of way over the bridge, the defendant was liable."

In the first place, properly speaking, it was not a crossing. In the second place, although it was really a dangerous spot, all that could have been expected of the driver of the truck was to look out and make sure that the bridge was clear, as indeed it was. What may well be said to have been the sole cause of the accident was the incomprehensible decision of the engineer of the train to proceed. Even if the railroad company had had an exclusive right of way there, the train should not have passed over a bridge, which was already occupied, rightly or wrongly, by a truck.

As illustrating the respective rights of the parties in cases similar to the one at bar, we will transcribe the following quotations cited in the brief of the appellees:

"The rule is well established that where railroad tracks are laid longitudinally along a public street, the public have a right to the use of the entire street, including that part of it on which the tracks are laid, so far as the right is not inconsistent with the company's right to operate trains in a reasonable manner over its tracks; and that therefore one who is upon the track in the street is not a trespasser. In accordance with the principle above indicated, that persons on railroad tracks in a public street are not trespassers, the courts in a number of cases have laid down general rules regarding the mutual duties and liabilities of a railroad company and the public in the use of the street. The general doctrine would appear to be that pedestrians and drivers of vehicles have a right to use the street, including that part of it on which the track is laid, and that such right is equal to that of a railroad company." 22 R.C.L. 938.

"The liability of a railroad company operating trains along a public street is very different from its liability in running trains

where it has an exclusive right of way, and at places where its servants in charge of trains have no reason to expect that persons may be on the track, and it is well settled that it is the duty of railroad companies thus operating along a public street to exercise a degree of care corresponding to the danger of such operation and that neglect of any precautions proper in the peculiar circumstances of the locality constitutes negligence. They are obliged at all times of the day and night to anticipate the presence of travelers on the street, and to take such precautions relating to speed, warning, and lookout as may be reasonably sufficient to avoid injury to them.'' 22 R.C.L. 940.

The ninth assignment of error is unimportant. From the failure of the court to mention the photographs when referring to the evidence of the defendant, it can not be inferred that it did not take them into consideration in reaching its conclusions in regard to the evidence. We have examined those photographs, and notwithstanding the skill with which they have been taken, the narrowness of the place and its condition are clearly noticeable, thus confirming, instead of disproving, the testimony of the witnesses for the plaintiffs and the findings of fact made by the trial judge.

In the twelfth assignment of error the appellant contends that the district court erred in holding that the collision was due to the lack of caution on the part of the persons operating the train, and in rendering a judgment for the plaintiffs.

We think that what we have already said is sufficient to conclude that this error is without merit. We will not go into a detailed consideration of the evidence. Suffice it to say that from a reading thereof it must be concluded that, had it not been for the negligent and rash conduct of the defendant's servants, the accident could not have happened.

There only remains to be considered the eleventh assignment of error. In that assignment the judgments appealed from are attacked because of the amount of damages awarded. Sufficient evidence has been introduced in cases Nos. 4789 and 4791 to support the judgments rendered therein for one thousand dollars and five hundred dollars, respectively.

The plaintiffs sustained injuries, which were specified. The wages they were earning, the time of their confinement in the hospital, doctor's and pharmacy's bills, and plaintiffs' present condition, have all been proved.

The evidence in case No. 4790 as to the item of $900 for prospective earnings, is deficient, and it is so admitted by the appellee itself, Rodríguez Hevia & Co., which has requested that the case be remanded to the lower court for the purpose of clearing up this point. That can not be done. Appellee has had its opportunity and we regard the transcript as complete, since it is so certified and there was no showing made to the contrary at the proper time. What is claimed now is a mere surmise.

The evidence in regard to the item of $300 for depreciation is too vague to support an award against the defendant. That relating to the item of $694 for repairs only justifies the sum of $600.

By reason of the foregoing, the jugdment in appeal No. 4790 must be modified by reducing the amount allowed for damages to $600 and, as modified, affirmed; and the judgments in appeals Nos. 4789 and 4791 must be affirmed in all respects.

MR. JUSTICE WOLF, dissenting.

A careful study of the facts convinces me that th proximate cause of this accident was the failure of the driver of the truck to act as an ordinarily prudent man. I can not, in the first place, agree with the court below or with the majority of this court that the truck arrived first at the point of the accident. From a truck traveling from Bayamón to Cataño a train coming from Bayamón can not perhaps be readily seen until shortly before the bridge is entered. Similarly, an engineer on the train will not readily see an approaching truck, coming in the same general direction, until the train nears the bridge. From the standpoint of the engineer, be-

fore the accident happened there was nothing in view ahead of him at any time. The place was well known, as the driver testified, and a train might be expected at any moment. Although the road was clearly a public one, the duty devolved upon a driver independently of any warning, to stop, look and listen. The law of crossing applies. The duty here was, if anything, clearer, as a possible crossing of the vehicles only could take place a little later and then on the bridge. The driver had, if he was traveling slowly, sufficient time to see and stop. The photographs admitted in evidence, seen and acknowledged by the truck driver, show that the collision took place quite a few feet away from the entrance to the bridge. A salient fact of the case is that the truck driver, if he had given heed to the signal of his watchman, could have gone on ahead a very short distance, stopped, and no accident would have occurred. This is especially true if the truck driver was traveling slowly as he testified. What actually happened, in my opinion, was that the train and the truck arrived at the spot of the accident almost simultaneously. If anything, as demonstrated by the photographs and the inference to be drawn from them, the train arrived a little before the truck. The train was on its track, somewhat to the south of the road and going east. The photographs and the physical facts show that the locomotive and some of the cars left the track, crossed the road to the north and fell into the precipice on the north side, probably carrying the truck with it. This could only have happened if the front of the locomotive was made to incline towards the north. A blow to the rear of the locomotive would accomplish this result. As the locomotive went over the course of the road almost perpendicularly, the inclination given to the rear of the locomotive must have been a strong one. The impact was a heavy one and could only have been given by the truck. It is conceded that immediately before the accident the truck swerved to the south, trying perhaps to stop. This sudden turn, to my mind, is inexplicable.

As I have partially intimated, the negligence of the defendant was not shown by a preponderance of the evidence. Indeed I can not see it. Assuming such negligence I am utterly unable to see how the doctrine of acts done in emergency applies and overrides the doctrine of contributory negligence. Assuming defendant's negligence, it was strongly the duty of the truck driver to stop. He had ample opportunity to do so.. His swerving to the south was an unreasonable and reckless act. The doctrine of acts in emergency does not apply to reckless and unreasonable actions. Examining some of the cases in the note to R.C.L. cited by both courts, it is also evident that the emergency, if any, was created by the plaintiff. He actually left a place of safety where he could have stopped. There was only an emergency in the sense that in any case of contributory negligence an emergency may seem apparent to a plaintiff. If he is rushing across a track in front of a locomotive and could have safely reached the other side, there is no protection for him in the eyes of the law if he turns towards the locomotive. From a legal standpoint I find the case no different. I am authorized to state that Mr. Justice Aldrey concurs in this dissent.

ON REHEARING

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The defendant and appellant in the present cases has filed motions for rehearing. In the first place, it prays that the judgment rendered in each case be modified by striking out the pronouncement of costs, on the ground that if two out of the five justices of the Court agreed with the appellant, the latter should not be considered as an obstinate litigant.

It then urges that the judgments should be reconsidered in their entirety, first, because according to the appellant the facts in the present cases are exactly the same as those in *Ferrer and Son* v. *American Railroad Co.*, 39 P.R.R. 36, and

*Ferrari* v. *American Railroad Co.,* 39 P.R.R. 44, since it appears from the record that the driver of the truck did not stop, look, or listen before entering the bridge; and, second, because it had not been proved that any wrong signal had been given and, therefore, no acts done in emergency had been shown.

We will take up first the objections made to the judgments as a whole.

The facts in *Ferrer and Son, supra,* are different. There the train was on its tracks. That track was crossed by a road leading to a factory and used exclusively by persons having business therein, and there was a signpost exhibiting the words "No Thoroughfare." It was over such a road and under such circumstances that the truck, which collided with the train, traveled. In the case before us defendant's train left its private roadbed to make use of a public bridge over which it was allowed to lay its track and pass, and the truck with which said train collided was nearer to the bridge than the locomotive and the wagons of defendant's train. Also, the accident in the *Ferrari* case, *supra,* occurred while the plaintiff attempted to cross the railroad track notwithstanding the circumstance of having had an opportunity to see the locomotive and the wagons when approaching the crossing.

As to the contention that there is no showing that the truck had stopped, it is stated in the motions for rehearing that the truck's helper testified that he had rung the bell for the driver to stop. The record shows that it stopped in the manner set forth by the trial judge; but even granting that it was not so shown, then the liability of the defendant for overtaking and striking the truck would even be greater.

Therefore, there is no justification for reconsidering our former judgments in their essential pronouncements. The argument relating to the imposition of costs is worthy of consideration, and in order to dispose of it finally the other

party should be given an opportunity to be heard on the question.

Mr. Justice Wolf and Mr. Justice Aldrey dissented as to the refusal to reconsider.

### ON SECOND REHEARING

Mr. Chief Justice Del Toro delivered the opinion of the Court.

At the hearing granted both parties appeared by their counsel and argued the question orally, and in addition, the appellees filed their written opposition to any modification of the judgment absolving the defendant from the payment of costs.

The appellees laid stress on the fact that the costs had not been imposed by this court, but by the district court which tried the case and whose judgment was affirmed, and that the appellant neither appealed expressly and separately from the pronouncement of costs nor assigned in its brief the imposition of costs as error.

It is not necessary to appeal separately from each of the pronouncements of a judgment. It will suffice to appeal from the judgment in order that it will be understood that all its pronouncements have been appealed from. Any pronouncement which is deemed by the appellant to be prejudicial to him and contrary to the facts and the law must be assigned in his brief as error, and so argued. Otherwise an appellate court will not consider the point in deciding the appeal. This is the rule that we must follow in the present case and, therefore, we can not consider the objections now raised in argument by the defendant and appellant.

In this connection, it would seem useful to quote from the decision of this court in *Vere* v. *Bianchi*, 36 P.R.R. 654, 656, as follows:

"The complainant, Charles Vere, now says that on appealing from the District Court of Mayagüez he also appealed from the pronouncement of costs and we find this to be true. On the other

hand, this claim for exemption from costs was abandoned in the brief. No assignment of errors touches this matter and the question is not discussed in any part of the brief presented to this court. We hold that the complainant, having in this manner renounced his right, should not now be heard in the matter of costs. We doubt if complainant's position ought to be bettered after this lapse of time.''

The motion for reconsideration as to the imposition of the costs must also be denied.

Mr. Justice Wolf and Mr. Justice Aldrey dissented.